**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**STEVEN STOESZ**
Westfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana



FILED

Mar 28 2013, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STEVEN REYNOLDS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  29A04-1208-CR-423 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Wayne Sturtevant, Judge
Cause No. 29D05-1106-FD-9798

**March 28, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

Steven Reynolds ("Reynolds") appeals his conviction, following a jury trial, for Class D felony intimidation.[1]

We affirm.

ISSUE

Whether sufficient evidence supports Reynolds's conviction.

FACTS

On June 17, 2011, Reynolds, who was incarcerated in the Madison County jail, was transported to a Hamilton County Superior Court to attend a guardianship hearing for three-year-old A.K. The guardianship petition had been filed by A.K.'s maternal grandmother, Stacie Kirkman ("Stacie") so that she could become the guardian over A.K. while A.K's mother and Stacie's daughter, Shelby Kirkman ("Shelby), was in jail on a work release program. Reynolds attended the hearing as an interested party. Reynolds's parents also attended the hearing, which was presided over by Magistrate William Greenaway ("the magistrate").

At some point prior to the hearing, Reynolds had filed—in the guardianship proceeding—a pro se petition to establish paternity of A.K. Stacie then filed a petition to dismiss the paternity petition from the guardianship action. When discussing his paternity petition with the magistrate, Reynolds told the magistrate that he thought he should establish paternity if a guardianship was going to be established. Reynolds also stated, "[I]f I'm being lead [sic] to believe, and me and my family have both spent money

---

[1] Ind. Code § 35-45-2-1.

2

on, on a child that wasn't mine, I'd, I'd like to know if it's not mine." (Ex. Vol. at 182.) The magistrate informed Reynolds that he was required to file the paternity petition as a separate action and dismissed the petition. Reynolds indicated that he understood and would file a separate paternity action.

The magistrate then conducted the guardianship proceeding. Stacie's attorney, Jillian Keating ("Attorney Keating"), questioned both Stacie and Shelby and established that Shelby had consented to Stacie being appointed as A.K.'s guardian. The magistrate determined A.K. to be incapacitated and appointed Stacie as her guardian.

Thereafter, Reynolds spoke up and claimed that he had a notarized document in which Shelby had allegedly signed custody of A.K. to Reynolds's parents three months earlier. The magistrate informed Reynolds that his document would not be "worth the paper it's written on" if it had not been filed with the trial court as part of the guardianship proceeding. (Tr. 191). The magistrate told Reynolds that if he wanted to contest the guardianship, he should have intervened.

The magistrate again explained to Reynolds that he would need to establish paternity in a separate paternity proceeding. As Reynolds expressed his frustration at trying to file a pro se paternity petition, tensions started to arise between Shelby and Reynolds's mother. Reynolds's mother then asked the magistrate if she and her husband would be able to visit their granddaughter, and the magistrate responded that nothing could be ordered until Reynolds had established paternity. After the magistrate informed

3

Reynolds that he might be prohibited under the statute from establishing paternity[2] for three-year-old A.K., the following exchange occurred in the courtroom:

| | |
|---|---|
| [Reynolds's mother]: | But he's not ordered to pay child support. |
| THE COURT: | No. |
| [Reynolds's mother]: | That's good. Don't. |
| [Stacie]: | We don't want it. |
| THE COURT: | Okay. Well, why don't we just go ahead --. |
| MR. REYNOLDS: | I want it. |
| THE COURT: | Okay. Why don't you folks --. |
| MR. REYNOLDS: | [Officer] Defoe, you want to grab that, bro'. And, you better tell them to have the transport damn ready, bro'. Dead serious. I'm not even playing. Let's get the fuck out of dodge. |
| THE COURT: | Okay. Well, at this point, the Court's finding you in con-, direct contempt for whatever else you are being held on, due to your language in this Court, which brings the ability of the -- |
| MR. REYNOLDS: | Come on man, I'm, I'm going to prison for 70 years, boss. |
| THE COURT: | 70 years? |
| MR. REYNOLDS: | I'm going --. Let's get out of here, man |
| THE COURT: | How long are you gone for? |
| MR. REYNOLDS: | Huh? |
| THE COURT: | How --? |

---

[2] Indiana Code § 31-14-5-3 (b) provides, in relevant part, that "a man alleging to be the child's father . . . must file a paternity action not later than two (2) years after the child is born . . . ."

4

| | |
|---|---|
| MR. REYNOLDS: | I've been, I've been down my whole life. I'm going back for 70 years. You think I'm worried about contempt? |
| THE COURT: | 70? Okay. |
| OFFICER ROGERS: | Control. |
| THE COURT: | In that case. No, I'm not worried about contempt then. You're remanded. Good luck to you. |
| OFFICER ROGERS: | Can you get transport over here (INDISCERNIBLE). |
| [Attorney Keating]: | There's still pending charges, Your Honor. |
| THE COURT: | Okay. Well, I'm not going to worry about contempt. He's facing that. Okay. |

* * * * *

| | |
|---|---|
| OFFICER ROGERS: | Stand by. |
| MR. REYNOLDS: | I've got something for you (INDISCERNIBLE). I swear to God, Shelby, I'm going to kill you. |
| [Reynolds's mother]: | Sir, I want a restrain. |
| MR. REYNOLDS: | I'm going to kill you whore. |
| [Reynolds's mother]: | Sir, I want a restraining order. |
| THE COURT: | Wait. Okay. Wait up. Will you stop it, because I've got a record running. And, the record clearly picked up him threatening to kill her, right? |
| COURT REPORTER: | Yes, it did. |
| THE COURT: | Okay. |

| | |
|---|---|
| MR. REYNOLDS: | *Yelled Out from hallway* (INDISCERNIBLE). I'll kill you! |
| THE COURT: | Leave the record running. |
| OFFICER ROGERS: | 1203 Could we get another 17 Unit to assist with the 1749. He's on (INDISCERNIBLE) elevator. |
| THE COURT: | We need to have a copy of this transcript created. Submitted to the prosecutor's office at the earliest possible convenience. Because, obviously, the Respondent [Reynolds] has just threatened to kill this individual. Okay. There you go. Okay. Good luck guys. |

(Ex. Vol. at 173-76) (emphasis in original).

The State charged Reynolds with Class D felony intimidation. On July 12, 2012, the trial court held a jury trial. Attorney Keating, the court reporter from the guardianship hearing, and Shelby testified as State's witnesses. Attorney Keating described Reynolds's actions in the courtroom during the guardianship hearing and the threats made toward Shelby during that hearing. The State also played a redacted version of the audio recording of the guardianship hearing.[3] The jury found Reynolds guilty as charged. The trial court imposed a three (3) year sentence to be served at the Department of Correction. Reynolds now appeals his conviction.

## DECISION

Reynolds argues that the evidence was insufficient to support his conviction for intimidation.

---

[3] The State redacted the references that Reynolds was facing 70 years in prison.

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the [jury's verdict]. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original).

A defendant commits intimidation as a class D felony when he communicates a threat to commit a forcible felony[4] against another person with the intent that the person be placed in fear of retaliation for a prior lawful act. I.C. § 35–45–2–1. In order to convict Reynolds of class D felony intimidation as charged, the State was required to prove beyond a reasonable doubt that Reynolds communicated a threat to commit a forcible felony against Shelby, i.e., threatened to kill her, with the intent that Shelby be placed in fear of retaliation for the prior lawful act of participating in the guardianship proceedings. (*See id.*; App. 8). To establish intimidation, the State must specifically identify a legal act by the victim and "establish that the legal act occurred prior to the threat and that the defendant intended to place the victim in fear of retaliation for that act." *Casey v. State*, 676 N.E.2d 1069, 1072 (Ind. Ct. App. 1997).

---

[4] A "forcible felony" is "a felony that involves the use or threat of force against a human being, or in which there is imminent danger of bodily injury to a human being." I.C. § 35-31.5-2-138.

7

Reynolds does not dispute that he threatened to kill Shelby. Indeed, he could not credibly challenge this element as his threat to kill Shelby was recorded during the guardianship proceeding and thereafter transcribed and played for the jury. Instead, Reynolds contends that the evidence was insufficient to show that he threatened Shelby for participating in the guardianship proceeding and claims that his threats were made because his petition to establish paternity was denied. He asserts that "[t]here was no evidence offered by the State at trial which could be interpreted to prove that Reynolds['s] threat were made to [Shelby] for the prior lawful act of participating in the guardianship proceedings." (Reynolds's Br. at 9).

Here, the record reveals that tensions escalated during this guardianship hearing to the point where Reynolds threatened to kill Shelby. Shelby did not tell Reynolds about the guardianship proceeding, despite the fact that she informally acknowledged him as A.K.'s father. Nevertheless, Reynolds attended the guardianship proceeding as an interested party and sought to establish paternity of three-year-old A.K. as part of that guardianship proceeding. During the guardianship hearing, the trial court dismissed Reynolds's paternity petition and informed him that he needed to file a separate paternity action. Also during the hearing, Shelby, who was incarcerated on a work release program, consented to her mother, Stacie, being appointed as guardian of A.K. Immediately after the magistrate named Stacie as guardian, Reynolds attempted to informally challenge the appointment by alleging that Shelby had previously signed a consent for his own parents to have custody of A.K. The magistrate told Reynolds that if he wanted to contest the guardianship, he should have intervened, which he could do after

8

establishing paternity. After the magistrate indicated that Reynolds's parents would not be able to visit A.K. and that Reynolds might be prohibited under the statute from establishing paternity for three-year-old A.K., Reynolds threatened to kill Shelby.

The evidence supports a reasonable inference that Reynolds's threat was made to place Shelby in fear of retaliation for her participation in the guardianship proceedings, during which Reynolds's paternity petition was dismissed. Reynolds's argument is nothing more than an invitation to reweigh the evidence, which we will not do. *See Drane*, 867 N.E.2d at 146. Because there was probative evidence from which the jury could have found Reynolds guilty beyond a reasonable doubt of Class D felony intimidation, we affirm his conviction. *See, e.g.*, *Graham v. State*, 713 N.E.2d 309, 312 (Ind. Ct. App. 1999) (affirming defendant's intimidation conviction where evidence that the defendant threatened the victim in the courtroom supported the inference that the defendant threatened the victim in retaliation for the victim's prior and continuing act of participating as a witness in the proceedings against the defendant), *trans. denied*.

Affirmed.

ROBB, C.J., and MAY, J., concur.